UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

FRAN E. COOK BOLDEN, M.D.,

                                    Plaintiff,

            -against-

DG TRC MANAGEMENT COMPANY, LLC
d/b/a TRICENNA, SKIN SPECIALTY
DERMATOLOGY, DANIEL GROISSER,
M.D., and SHANNON DELAGE,

                                    Defendants.

---------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: ___5/15/19___ |

19-CV-3425 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

            Plaintiff Dr. Fran E. Cook-Bolden ("Dr. Cook-Bolden") seeks a temporary restraining

order and a preliminary injunction enjoining enforcement of the arbitration provision contained

in an agreement she entered into with Defendant DG TRC Management, d/b/a Tricenna

("Tricenna") and Skin Specialty Dermatology (the "Practice"), as well as various other relief.

At a hearing held on April 29, 2019, the Court denied Dr. Cook-Bolden's request in its entirety.

This Order sets forth the basis for that decision.

## BACKGROUND

### I.      Factual Background[1]

            This case arises out of Dr. Cook-Bolden's sale of her medical practice and her subsequent

employment and termination by the Practice.   In connection with the sale of her medical

practice, Dr. Cook-Bolden entered into three agreements with Defendants, all dated January 12,

2018: the Asset Purchase Agreement (the "APA"); the Management Services Agreement; and the

---

[1] Unless otherwise noted, the facts in this section are not disputed.

Employment Agreement. (*See* Compl., Exs. A, B, C, respectively.)

On April 1, 2019, Defendants notified Dr. Cook-Bolden of their intent to terminate her

employment. (*Id.* ¶ 119.)

Also on April 1, 2019, the Practice and Tricenna filed for arbitration (the "AAA

Arbitration"), pursuant to § 7.15 of the APA. (*See id.*, Ex. P.) As relevant here, that section

provides:

> The Parties agree that any claim, controversy, or other matter in
> question based upon, arising out of, or otherwise in respect of this
> Agreement or any Transaction Document, including any dispute
> arising under any claim made pursuant to Article VI (a "Dispute")
> will be resolved by arbitration before one arbitrator chosen from a
> list of arbitrators provided by the American Arbitration Association
> (the "AAA") and mutually agreed to in writing by Purchaser and the
> Owner. . . . As promptly as practicable after the arbitrator is
> selected . . . , the Owner . . . and Purchaser . . . will prepare and
> submit a written presentation to the arbitrator, which may include,
> in addition to the arguments and position statements of each of
> Purchaser and the Owner, exhibits and testimony in the form of
> affidavits. As soon as practicable thereafter (and, in any event, no
> later than thirty (30) days after submission), the arbitrator will
> choose one of the Party's positions based solely upon the written
> presentation of Purchaser (and its professional advisors), on the one
> hand, and written presentation of the Owner (and her professional
> advisors), on the other hand. Purchaser, on the one hand, and the
> Owner on the other hand, will be responsible for its own costs and
> fees incurred in connection with such Dispute. Purchaser, on the
> one hand, and the Owner, on the other hand, will share equally the
> fees and expenses of the arbitrator. . . . . It is the desire and intent
> of the Parties, that such arbitration be held without any discovery,
> deposition or motion practice, that the arbitrator receive evidence
> solely through the written submissions and not hold an evidentiary
> hearing, and that the arbitrator has no ability to extend dates or apply
> rules that conflict with these provisions. Notwithstanding the
> foregoing or anything in this Agreement to the contrary, no Party
> shall be prevented from seeking equitable remedies for relief
> (including specific enforcement of any decision made by the
> Arbitration Firm or AAA hereunder) in a court of competent
> jurisdiction.

APA § 7.15.

On April 15, 2019, the Practice terminated Dr. Cook-Bolden's employment. (Compl. ¶ 119.)

## B. Procedural Background

On April 17, 2019, Dr. Cook-Bolden filed the complaint in this case, bringing claims for, *inter alia*, (1) discrimination in violation of 42 U.S.C. § 1981; (2) violations of New York State Human Rights Law; and (3) breach of contract. (*See* Compl. ¶¶ 184–344.) Dr. Cook-Bolden brings her claims against Tricenna; the Practice; Daniel Groisser, M.D., Tricenna's medical director and the Practice's President; and Shannon Delage, Tricenna's Chief Executive Officer (together, "Defendants"). (*See id.* ¶¶ 7–13; 75.) The Complaint seeks "judgment against the all Defendants . . . in excess of $500,000.00, plus compensatory damages, punitive damages and attorney's fees." (*Id.* at 57.)

Also on April 17, 2019, counsel for Dr. Cook-Bolden appeared *ex parte* in this Court's Chambers to ask the Court, acting its Part I capacity, to sign an order to show cause which included a temporary restraining order ("TRO").[2] That TRO, if granted, would have (1) enjoined the Defendants' enforcement of Paragraphs 13 and 14 of the Employment Agreement (the "Non-Competition Covenant" and "Non-Solicitation Covenant," respectively, and together, the "Restrictive Covenants"); (2) enjoined the AAA Arbitration; (3) directed the production of all documents relating to financial and medical records reflecting compensation due to Dr. Cook-Bolden pursuant to the Employment Agreement, and directed Defendants to pay Dr. Cook-Bolden's attorney's fees; and (4) enjoined Defendants from using the name "Dr. Fran E. Cook Bolden, M.D., P.C." Counsel also submitted a brief in support of its motion (the

---

[2] On that date, the undersigned was the Part I Judge on duty. The case has now been assigned permanently to the undersigned.

3

"Memorandum" or "Mem.").

The parties subsequently informed the Court by telephone that they had consented to a temporary stay of the AAA Arbitration pending the Court's resolution of Dr. Cook-Bolden's motion. Due to previously-scheduled commitments of both parties' counsel, a conference on Dr. Cook-Bolden's motion for preliminary relief could not be arranged until April 29, 2019.

On April 23, 2019, Defendants submitted a brief in opposition to Dr. Cook-Bolden's motion. (Mem. Opp'n Mot. ("Opp'n"), ECF No. 8.)

On April 25, 2019, Dr. Cook-Bolden submitted a reply brief in support of her motion. (Pl.'s Reply Mem. Further Supp. Mot. ("Reply"), ECF No. 13.)

On April 29, 2019, the Court held a hearing (the "April 29 Hearing"), during which it orally denied Dr. Cook-Bolden's motion. This Order explains the basis of the Court's ruling.

## LEGAL STANDARD

"The standard[s] for granting a [TRO] and a preliminary injunction . . . are identical." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (Leisure, J.). In order to obtain a TRO or a preliminary injunction, a movant "must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that [preliminary relief] is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

## DISCUSSION

### I. Arbitration

Dr. Cook-Bolden seeks to enjoin the AAA Arbitration filed by Defendants on the ground that the prohibition on discovery contained in § 7.15 of the APA is unconscionable, and thereby

renders her agreement to arbitrate unenforceable.[3]   Dr. Cook-Bolden argues that, absent

discovery, she will be precluded from vindicating her contractual and statutory rights and from

properly defending herself against Defendants' claims.   In response, Defendants contend that

"the gateway issue of arbitrability should be decided by an arbitrator," (Opp'n 8–9) and argue

that, in any event, § 7.15's prohibition on discovery is not unconscionable.[4]

For the reasons below, Dr. Cook-Bolden has not shown a likelihood of success on her

claim that the Court must decide arbitrability in the first instance.[5]

## A. Applicability of the Federal Arbitration Act

As an initial matter, the parties dispute whether the FAA applies to the APA.   In support

of her argument that the FAA does not apply, Dr. Cook-Bolden relies solely on the APA's choice

of law clause, which states, "THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE

STATE OF NEW YORK, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES."

APA § 7.12.   Although Dr. Cook-Bolden's briefing is less than clear on this point, she appears

---

[3] With respect to the unconscionability of Section 7.15, Dr. Cook-Golden also states, in passing, that: (1) the arbitration clause provides for her to bear her own fees, whereas 42 U.S.C. § 1988 provides for fee-shifting if Plaintiff is successful; (2) Tricenna refuses to produce documents to which Dr. Cook-Golden is entitled under §§ 15 and 17 of the Employment Agreement; and (3) when Plaintiff signed APA, she was represented by the same lawyer who was then representing Tricenna's Chief Medical Officer.  (*See* Mem. 15–17.)   Dr. Cook-Bolden does not develop any of these arguments in her submissions and does not provide any legal authority in support of the conclusion that they render the arbitration clause unconscionable.   She therefore has not demonstrated a likelihood of success on the merits of these arguments.

[4] Although neither party addresses the "arbitrability" of Dr. Cook-Bolden's unconscionability claim specifically, Defendants assert that "the claims in [Dr. Cook-Bolden's] Complaint must be asserted in the Arbitration, not in this Court."   Count 8 of Dr. Cook-Bolden's Complaint is entitled "Judgment against the Practice and Tricenna Rescinding Paragraph 7.15 of the APA, the Arbitration Provision."   This is sufficient to put the issue before the Court.

[5] The burden of proof on arbitrability "operates differently from the more conventional case in which the party seeking an injunction also bears the burden of proof on the issue in dispute." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 188 (2d Cir. 2019).   Dr. Cook-Bolden's burden as to the arbitrability issue is to show a likelihood of success in demonstrating that Defendants cannot establish their entitlement to arbitrate. *See id.*   But because the facts concerning Dr. Cook-Bolden's obligation to arbitrate are substantially undisputed, and the issues in contention relate entirely to questions of law, "the assignment of burdens of proof is of little or no consequence" to the Court's decision on arbitrability. *Id.*

to argue that New York law would prohibit arbitration of her statutory claims. (*See* Reply 5–6 (citing *Matter of Wertheim & Co. v. Halpert*, 48 N.Y.2d 681 (1979)).)

Contrary to Dr. Cook-Bolden's assertion, the FAA applies to the APA. "[T]he FAA creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 130 (2d Cir. 1997) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).[6] "[T]he inclusion in the contract of a general choice-of-law clause does not require application of state law to arbitrability issues, unless it is clear that the parties intended state arbitration law to apply on a particular issue." *Id.* at 131.

In any event, even if the FAA did not apply to the APA, New York law would not prohibit arbitration of Dr. Cook-Bolden's unconscionability claim. Under New York law, as under the FAA, "the question of arbitrability is an issue generally for judicial determination," unless the "parties 'evince[ ] a clear and unmistakable agreement to arbitrate arbitrability.'" *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (quoting *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 46 (1997) (alteration in *Shaw*)). For the reasons explained below, the parties have evinced such an intent here, and therefore arbitration of questions of arbitrability would also be appropriate under New York law.

## B. Intent to Arbitrate Arbitrability

"Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Just as parties may contract to have an

---

[6] Dr. Cook-Bolden does not argue that the APA falls outside of the FAA's coverage provision. *See* 9 U.S.C. §§ 1, 2.

6

arbitrator decide the merits of their disputes, they may also contract to have an arbitrator decide "'gateway' questions of 'arbitrability.'" *Gingras v. Think Fin., Inc.*, No. 16-2019-CV, 2019 WL 1780951, at *9 (2d Cir. Apr. 24, 2019) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Thus, in a dispute over whether a particular claim or set of claims is arbitrable, "[t]he first question is who decides arbitrability," that is, "whether the issue of arbitrability is for the court or for the arbitrator." *Id.* at *8.

"[W]hen an agreement 'clearly and unmistakably' delegates the issue of arbitrability to the arbitrator, [the court] will enforce it." *Id.* "Under th[is] standard[], arbitration clauses that use language mandating arbitration of, for example, 'all disputes . . . concerning or arising out' of an agreement constitute clear and unmistakable delegations of the power to decide questions of arbitrability to the arbitrator." *Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*, No. 18-CV-715 (DLC), 2018 WL 1587601, at *4 (S.D.N.Y. Mar. 29, 2018) (Cote, J.); *see also Shaw*, 322 F.3d at 121 (holding that an agreement to "arbitrate 'all disputes,' . . . qualified only by the requirement that the matter be one 'concerning or arising under' the . . . [a]greement" was evidence of intent to delegate the issue of arbitrability to the arbitrator).

Here, § 7.15 of the APA demonstrates the parties' clear and unmistakable intent to have an arbitrator, rather than a court, resolve threshold arbitrability questions. The first sentence of Section 7.15—which the Court will refer to as the "Delegation Provision"—provides:

> The Parties agree that any claim, controversy, or other matter in question based upon, arising out of, or otherwise in respect of this Agreement or any Transaction Document, . . . will be resolved by arbitration . . . ."

APA § 7.15. This language is "categorical, unconditional and unlimited" and thus encompasses a dispute over whether a claim is within the scope of arbitration. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996). Moreover, the APA does not carve out any categories of

claims for judicial, as opposed to arbitral, resolution. *Cf. Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) ("[W]hat the arbitration agreement says about whether a category of dispute is arbitrable can have an important bearing on whether it was the intention of the agreement to confer authority over arbitrability on arbitrators."). In light of the APA's unqualified delegation of authority to the arbitrator, Dr. Cook-Bolden cannot show a likelihood of success in demonstrating that Defendants cannot establish their entitlement to arbitrate the dispute at issue.

Dr. Cook-Bolden nevertheless contends that the parties did not agree to delegate the issue of arbitrability to the arbitrator because "there is absolutely no language . . . indicat[ing] that the parties agreed to let an arbitrator decide the issue of arbitrability." (Mem. 12.) This argument fails, because parties need not specifically reference arbitrability in order to demonstrate their intent to arbitrate all issues, including arbitrability. *See Shaw*, 322 F.3d at 121 ("[E]ven absent an express contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'" (quoting *PaineWebber*, 81 F.3d at 1200)). The language in § 7.15—which unambiguously requires arbitration of "any claim, controversy, or other matter in question"—is not meaningfully distinguishable from the "any and all" language in *Shaw Group*, and Dr. Cook-Bolden does not provide any authority to the contrary.

Dr. Cook-Bolden also contends, incorrectly, that "the APA requires that all equitable claims be decided by this Court," including her "claim[] . . . to rescind the APA arbitration's provision," invoking § 7.15's final sentence—which the Court will refer to as the Equitable

8

Relief Provision—together with § 7.13.  (Mem. 12.)[7]  Under the Equitable Relief Provision,

"no Party shall be prevented from seeking equitable remedies for relief (including specific

enforcement of any decision made by the Arbitration Firm or AAA hereunder) in a court of

competent jurisdiction."  APA § 7.15.  Section 7.13 of the APA provides, in relevant part:

> Except for the matters to be decided by means of arbitration pursuant
> to Section 7.15, each Party hereby (a) agrees to the exclusive
> jurisdiction of . . . if it can obtain jurisdiction, the United States
> District Court for the Southern District of New York, sitting in New
> York, New York . . . with respect to any claim or cause of action
> arising under or relating to this Agreement . . . "

APA § 7.13.  By their plain text, these provisions entitle Dr. Cook-Bolden to apply to a court of

competent jurisdiction for "equitable *remedies*" and prescribe the forums in which those remedies

may be be sought.  Neither provision entitles Dr. Cook-Bolden to have "equitable *claims*" heard

by a court rather than an arbitrator.  Even if the above-quoted language were not clear on this

point, this conclusion is confirmed by contrasting the final sentence of § 7.15 against the

Delegation Provision, which requires the parties to arbitrate "any *claim, controversy, or other

matter in question* based upon, arising out of, or otherwise in respect of this Agreement."  APA

§ 7.15.

To the extent Dr. Cook-Bolden argues that the presence in the APA of "both a broadly

worded arbitration clause and a clause allowing the parties to seek equitable relief from courts, . . .

creates an ambiguity as to whether the parties assigned questions of arbitrability to the arbitrator,"

*WMT Inv'rs, LLC v. Visionwall Corp.*, No. 09 CIV. 10509 (RMB), 2010 WL 2720607, at *3

(S.D.N.Y. June 28, 2010) (Berman, J.), that argument must be rejected.  "[U]nder New York law,

"[e]ffect and meaning must be given to every term of the contract, and reasonable effort must be

---

[7] Apart from quoting the federal-question jurisdiction statute, 28 U.S.C. § 1331, and the supplementary jurisdiction statute, *id.* § 1367, Dr. Cook-Bolden does not cite any legal authority for this argument.

made to harmonize all of its terms." *India.Com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005) (quoting *Reda v. Eastman Kodak Co.*, 649 N.Y.S.2d 555, 557 (4th Dep't 1996) (alteration in *Dalal*). Dr. Cook-Bolden's construction "would, solely on the basis of the form of relief sought, significantly narrow the broad provision for arbitration" contained in the Delegation Provision, "giv[ing] rise to a tension" between the Delegation Provision, on the one hand, and § 7.13 and the Equitable Relief Provision, on the other hand. *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 217 (S.D.N.Y. 1993) (Haight, J.). That tension is easily avoided by a reasonable construction that harmonizes the various provisions—namely, that the effect of § 7.15 "is to make injunctive relief in judicial courts of proper jurisdiction available to the parties in aid of arbitration, rather than (as [Dr. Cook-Bolden] would have it) transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed for." *Id.* at 218. The effect of § 7.13 is to recite the parties' agreement that, should a party pursue such relief, it is obligated to do in the Southern District of New York.

## C. Unconscionability

Where, as here, contracting parties have evinced a clear an unmistakable intent to delegate threshold arbitrability issues to an arbitrator, a court may not intervene "unless [a party] challenge[s] the delegation provision specifically." *Rent-A-Ctr.*, 561 U.S. at 72. In this case, Dr. Cook-Bolden challenges the following sentence, which appears in § 7.15, several sentences after the Delegation Provision:

> It is the desire and intent of the Parties, that such arbitration be held without any discovery, deposition or motion practice, that the arbitrator receive evidence solely through the written submissions and not hold an evidentiary hearing, and that the arbitrator has no ability to extend dates or apply rules that conflict with these provisions.

APA § 7.15. The Court will refer to this sentence as the "No Discovery Rule." Dr. Cook-

Bolden argues that the No Discovery Rule is unconscionable because it will preclude her from vindicating her statutory and contractual rights and from defending herself against Defendants' claims. (*See* Mem. 14–18.)

Importantly, Dr. Cook-Bolden (1) does not challenge the Delegation Provision; and (2) does not argue that the No Discovery Rule, as applied to the Delegation Provision, renders the latter unconscionable. *Cf. Rent-A-Ctr.*, 561 U.S. at 74. Because Dr. Cook-Bolden does not attack the Delegation Provision specifically, it must be treated as valid and enforceable under the FAA; pursuant to the Delegation Provision, it is the arbitrator who will decide whether Dr. Cook-Bolden's claims—including her claim that the No Discovery Rule is unconscionable—are subject to arbitration. *See id.* at 72–74; *see also, e.g.*, *Pingel v. Gen. Elec. Co.*, No. 3:14-CV-00632 (CSH), 2014 WL 7334588, at *6–7 (D. Conn. Dec. 19, 2014) (holding that where plaintiff claimed that procedural aspects of the arbitration were substantively unconscionable, but did not direct her challenge to the delegation provision specifically, the enforceability of the arbitration clause was a question for the arbitrator).

For the reasons above, Dr. Cook-Bolden has not met her burden to demonstrate a likelihood of success on her claim that Defendants cannot meet their burden to demonstrate their entitlement to arbitration.

## II. The Restrictive Covenants

The parties disagree as to whether Dr. Cook-Bolden's challenge to the Restrictive Covenants should be governed by the line of cases that address employee-employer relations, as Dr. Cook-Bolden argues, or the sale of a business, as Defendants argue. Even assuming that the employer-employee line of cases applies to the Restrictive Covenants, however, Dr. Cook-Bolden has not shown a likelihood of success on these claims and therefore is not entitled to a temporary restraining order enjoining enforcement of the Restrictive Covenants.

11

Under New York law, employee restraints are enforceable so long as they are reasonable. "A restraint is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388–89 (1999).

The Non-Competition Covenant lasts two years and applies solely to a 10-block radius of 150 E. 58th St., New York, NY 10155. *See* Employment Agreement § 13. This covenant (1) is limited in duration; (2) permits Dr. Cook-Bolden to practice anywhere in Manhattan above 68th Street and below 48th Street, as well as, among other places, anywhere in the Bronx, Westchester, or New Jersey; and (3) applies to a medical professional. The Non-Solicitation Covenant prevents Plaintiff from soliciting for treatment the Practice's former existing or former patients. *See id.* § 14.

Dr. Cook-Bolden does not provide any authority supporting the conclusion that the restraints in the Restrictive Covenants are unreasonable. Although Dr. Cook-Bolden contends that non-competition clauses are unenforceable under New York law where an employee is terminated without cause, *see Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84, 87 (1979), she fails to adequately contest Defendant's assertion that she was terminated for cause (*see* Opp'n at 7). Caselaw strongly suggests that where an employee is terminated for cause, a reasonable non-competition clause remains enforceable. *See Gismondi, Paglia, Sherling, M.D., P.C. v. Franco*, 104 F. Supp. 2d 223, 233–34 (S.D.N.Y. 2000), *order vacated in part on other grounds*, 206 F. Supp. 2d 597 (S.D.N.Y. 2002) (holding that, where physician was terminated for cause, non-compete was enforceable under New York law).

For the foregoing reasons, Dr. Cook-Bolden has not met her burden to show that she is likely to succeed on the merits of her claim that the Restrictive Covenants are unenforceable.

12

## III. Medical and Financial Records

Dr. Cook-Bolden contends that she is entitled, under Sections 15 and 17(b) of the Employment Agreement, to certain medical and financial records.

Section 17 of the Employment Agreement unambiguously states that medical records are property of the Practice, and that Dr. Cook-Bolden must obtain the Practice's consent in order to access the medical records. Dr. Cook-Bolden therefore has not shown that she is likely to succeed on her claim that she is entitled to the medical records.

During the April 29 Hearing, the parties agreed to meet and confer on the issue of Dr. Cook-Bolden's access to financial records. (Apr. 25 Hr'g Tr. 9:8–12.) In light of that agreement, Dr. Cook-Bolden's request for production of the financial records by Defendants is moot.

## IV. Use of Dr. Cook-Bolden's Name

Defendants have provided a sworn declaration from Shannon Delage stating that "Tricenna and the Practice have . . . taken steps to remove [Dr. Cook-Bolden's] name from any form of marketing or advertising distributed by the Practice, the office's physical premises, any invoices sent out by the Practice for services rendered after Plaintiff was placed on administrative leave, and any documentation concerning any clinical trials associated with the Practice." (Delage Decl. ¶ 8.) Dr. Cook-Bolden has not provided any evidence contradicting these assertions. Because there is no real dispute as to whether Defendants will cease use of Dr. Cook-Bolden's name, Dr. Cook-Bolden's motion is moot in this respect.

13